IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| v. | * | **Criminal No. SAG-13-0334** |
| | * | |
| **JEFFREY GREGORY,** | * | |
| | * | |
| **Defendant.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## AMENDED MEMORANDUM OPINION

Jeffrey Gregory, who is presently in Bureau of Prisons custody at FMC Lexington, has filed a Motion for Compassionate Release ("the Motion"), ECF 110, along with a number of supplemental and related filings. ECF 115, 118, 119, 120, 121, 122, 123. One such filing was captioned "Motion to Amend/Correct," ECF 118, and sought to clarify that Gregory seeks release pursuant to Section 404 of the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i). The Motion to Amend/Correct will be granted, and Gregory's Motion will be considered under the First Step Act standard. The Government filed an opposition to the Motion, ECF 127. Because Gregory initially did not file a reply, this Court issued a memorandum opinion and order denying the motion on October 9, 2020. ECF 130, 131. Subsequently, however, Gregory filed a motion for reconsideration, explaining that he had not received a copy of the Government's opposition. ECF 133. This Court granted Gregory additional time to file his reply, followed by multiple extensions of time at Gregory's request. ECF 137, 139, 141. On May 3, 2021, Gregory filed an extensive reply memorandum, attaching various exhibits. ECF 144. This Court has reviewed all of the relevant filings, including the supplemental medical records supplied by the Government, ECF 146. For the reasons that follow, Gregory's Motion is DENIED.

1

I.      **Factual and Procedural Background**

Gregory was previously convicted, in this Court, of possession of a firearm following a federal conviction, and possession of a firearm in furtherance of a drug trafficking offense. *See United States v. Gregory*, JFM-10-024. He entered federal custody in January 2010, and eventually received a total sentence of ninety-three months imprisonment. *Id.* During late 2010, state authorities investigating the 2009 execution-style murder of Carlos Bottello received information suggesting that Gregory was the murderer. After completing their investigation, the state charged Gregory with first-degree murder for Bottello's death. However, over the course of the prosecution, the state violated Gregory's rights under the Interstate Agreement on Detainers, resulting in the dismissal of the state murder charge, with prejudice.

As a result, in 2013, while Gregory was still serving his sentence for his original federal conviction, the federal government brought a new indictment against him, this time focused on a series of straw purchases of firearms in 2008 and 2009. Specifically, Gregory agreed to the following statement of facts at his rearraignment, in relevant part proffered by the Government as follows:

> During the period of January 2008 through March 2009, the defendant Jeffrey Gregory engaged in conspiracy with other persons to make material false statements in connection with the acquisition of firearms for Federal Firearms Licensed dealers as that term is defined in Chapter 44, Title 18, United States Code. Here on after, FFL. Federal Firearms Licensee.
>
> And to make false statements to FFL about information that the FFLs were required to keep under Chapter 44, Title 18 United States Code. Mr. Gregory went with his co-conspirator on three occasions . . . to have the co-conspirator engage in a straw purchase of a firearm on Mr. Gregory's behalf. Mr. Gregory was unable to purchase firearms himself because he had a prohibiting criminal conviction.
>
> During each of those visits to gun stores, the co-conspirator filled out Federal and State paperwork including an ATF form 4473, which FFLs are required by Federal Law to have prepared and maintained as part of each sale of a firearm.

2

> The form 4473 notifies the buyer that engaging in a straw purchase, i.e. engaging in a purchase on behalf of another person who is the true buyer is unlawful.
>
> . . . .
>
> . . . Mr. Gregory and the co-conspirator went to gun stores on three occasions. On each occasion, Mr. Gregory provided the co-conspirator with money, told the co-conspirator which firearms she should obtain and instructed the co-conspirator to represent herself as the true buyer.

ECF 127-1 at 17–19.

At Gregory's sentencing, the Government represented that it was prepared to present evidence that Gregory had murdered Bottello with one of the firearms he acquired by straw purchase, raising his base offense level for the gun offense to forty-three, with an advisory guidelines range of life in prison. ECF 127-2 at 4. Gregory's attorney conceded that the government could have presented persuasive evidence of Gregory's commission of the murder. *Id.* at 5 (Gregory's attorney answering "I am" when asked "[A]re you confident that the government could have presented evidence of the murder, persuasive evidence of the murder?"). Although Gregory did not sign a plea agreement, in lieu of the presentation of the evidence of the homicide, the Government and Gregory jointly agreed to recommend a sentence of ten years imprisonment, to run consecutively, for each of the two counts pending against Gregory, and to allow that sentence to run concurrent to the remaining portion of the federal sentence that Gregory was then serving. *Id.* at 4, 9. United States District Judge J. Frederick Motz concurred with the parties' recommendation and imposed the agreed sentence. *Id.* at 8–10. Gregory now seeks to

have that sentence reduced, requesting release to home confinement in light of the COVID-19 pandemic.[1]

## II. Legal Standards

As part of the First Step Act, enacted in December, 2018, Congress expanded 18 U.S.C. § 3582(c), permitting courts to reduce an existing term of imprisonment where "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. No. 115-391, tit. VI, § 603(b), 132 Stat. 5194, 5239-41 (2018). While previously, the Bureau of Prisons ("BOP") needed to initiate any motion for compassionate release, the First Step Act granted defendants the ability to move the Court for a reduction in their sentences for "extraordinary and compelling reasons." § 603(b)(1); *United States v. High*, No. 20-7350, 2021 WL 1823289, at *3 (4th Cir. May 7, 2021). Before a defendant's motion can be filed with the Court, one of two conditions must be satisfied: (1) the defendant must have exhausted all administrative remedies to appeal the BOP's failure to bring a motion on his behalf, or (2) thirty days must have lapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier. *Id.* Once a motion is for compassionate release is properly filed, the Court follows a three-step inquiry: (1) determining whether "extraordinary and compelling reasons" render the inmate eligible for compassionate release; (2) considering whether the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a sentence reduction; and (3) ensuring that the reduction is "consistent with applicable

---

[1] Gregory's current arguments about the legality of considering the murder as relevant conduct at his sentencing are not properly raised in the context of a compassionate release motion. Such issues are considered on direct appeal. Additionally, his arguments that his attorney provided ineffective assistance during plea bargaining and sentencing were already raised and adjudicated in his previous 28 U.S.C. § 2255 motion. ECF 103, 104 (denying Gregory's § 2255 motion that his counsel was ineffective "for not moving to exclude evidence of his commission of a murder from consideration at sentencing" and multiple other grounds).

policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A); *High*, 2021 WL 1823289, at *3.

### III.   Analysis

The Government concedes that Gregory adequately exhausted his administrative remedies, and is therefore entitled to file this Motion. ECF 127 at 9. However, the current record does not reflect an "extraordinary and compelling reason" rendering Gregory eligible for consideration for compassionate release. Moreover, as explained below, even if he had articulated an "extraordinary and compelling reason," a review of the § 3553(a) factors and relevant Sentencing Commission policy counsels against his release.

#### A.   Extraordinary and Compelling Reasons

Congress has charged the United States Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). 28 U.S.C. § 994(t). In response, the Commission defined "extraordinary and compelling reasons" to exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over sixty-five years old, has failing health, and has served at least ten years or seventy-five percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) "other reasons" exist, as determined by the BOP. *See* U.S. Sent'g Guidelines Manual § 1B1.13 cmt. n.1(A)–(D) (U.S. Sent'g Comm'n 2018) [hereinafter U.S.S.G.].

As several courts in this District have recognized, "[t]he First Step Act is in tension with the [Sentencing] Commission's Policy Statement," because the "catch-all" provision of § 1B1.13 cmt. n.1(D) only allows the BOP to determine what "other reasons" constitute "extraordinary and

5

compelling" ones for release. *United States v. Gutman*, Crim. No. RDB-19-0069, 2020 WL 2467435, at *2 (D. Md. May 13, 2020); *see also, e.g.*, *Wise v. United States*, Crim. No. ELH-18-72, 2020 WL 2614816, at *4-6 (D. Md. May 22, 2020) (describing how § 1B1.13 "is outdated in light of the [First Step Act]," and collecting cases holding similarly); *United States v. Decator*, 452 F. Supp. 3d 320, 323 (D. Md. 2020) ("The Policy Statement in § 1B1.13, however, is at least partially inconsistent with the First Step Act."), *affirmed sub nom. United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020). The Fourth Circuit recently addressed this apparent gap and agreed that "§ 1B1.3 does not apply to defendant-filed motions under § 3582(c)(1)(A)." *McCoy*, 981 F.3d 271, 281–82 (4th Cir. 2020) ("We agree with the decisions of [the Second, Sixth, and Seventh Circuit], which reflect a growing consensus in the district courts."). Because there is no current policy statement governing compassionate-release motions filed by defendants under the First Step Act, this Court is "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise." *Id.* at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

Relevant to this case, the COVID-19 pandemic can, in certain circumstances, give rise to an "extraordinary and compelling reason" permitting the Court to consider further an inmate's release under the First Step Act. *High*, 2021 WL 1823289, at *3 (acknowledging that "depending on the circumstances, an inmate might well be able to present an extraordinary and compelling reason for release based on COVID-19"); *e.g.*, *Wise*, 2020 WL 2614816, at *6–8; *Gutman*, 2020 WL 2467435, at *2. In this Court's view, the case law demonstrates that continued exposure to COVID-19 in an incarcerative setting might convert a medical condition that might not otherwise be deemed "serious" into a "serious physical or medical condition . . . that substantially diminishes

6

the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *See* U.S.S.G. § 1B1.13 cmt. n. 1(A)(ii)(I).

The fact that COVID-19 is present in a correctional facility, however, is not alone sufficient to qualify an inmate for compassionate release. *See United States v. Williams*, Crim. No. PWG-13-544, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020) (Day, Mag. J.) ("The existence of the present pandemic, without more, is not tantamount to a 'get out of jail free' card."). Instead, an inmate must demonstrate that he (1) has a condition that compellingly elevates his risk of becoming seriously ill, or dying, from COVID-19, and (2) is more likely to contract COVID-19 in his particular institution than if released. *See, e.g.*, *Wise*, 2020 WL 2614816, at *6–7 (discussing the danger that COVID-19 poses, and collecting cases finding that "serious chronic medical conditions and old age qualify" as compelling reasons for compassionate release during the pandemic); *United States v. Austin*, Case No. 15-20609, 2020 WL 2507622, at *4–5 (E.D. Mich. May 15, 2020) (finding that even if the defendant's petition was timely, release would be improper, even though he both was immunocompromised and had heart disease, because there were no COVID-19 cases at his prison), *aff'd*, 825 F. App'x 324 (6th Cir. 2020); *United States v. Harper*, Crim. No. 7:18-cr-00025, 2020 WL 2046381, at *3 & n.3 (W.D. Va. Apr. 28, 2020) (finding release justified by the defendant's age, heart condition, COPD, emphysema, and asthma, coupled with the fact that the prison he was housed at had "the fourth largest number of infections among federal prisons in the country"); *United States v. Mel*, No. TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020); *United States v. Shah*, Case No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020) (denying release, in part, because there were no COVID-19 cases at the inmate's facility, and the prison was making efforts to protect inmates).

7

Gregory does suffer from pulmonary-related conditions and continues to experience shortness of breath following a recent bout with and recovery from COVID-19. However, Gregory, who is in his mid-fifties, has since received both doses of the Moderna vaccine. As best we know today, the Moderna vaccine dramatically reduces most recipients' risk of severe complications or death from COVID-19 infection, even as to many of the more prevalent variants and even for recipients with increased risk of COVID-19 complications. *See Moderna COVID-19 Vaccine Questions*, Ctrs. for Disease Control & Prevention (last updated Apr. 6, 2021) (stating trials demonstrate the vaccine to be 94.1% effective against symptomatic COVID-19), https://www.cdc.gov/vaccines/covid-19/info-by-product/moderna/moderna-faqs.html. Thus, even if Gregory were to become re-infected, his likelihood of complications would be far lower than with his initial infection.

This Court agrees with the vast majority of other courts who have ruled, on the basis of present understanding, that the highly effective available vaccines dramatically affect whether an inmate's medical conditions constitute the "extraordinary and compelling reason" required to further consider compassionate release. *See, e.g.*, *United States v. Johnson*, CR/A No. 4:19-cr-00579-DCC-1, 2021 WL 1791499, at *2 (D.S.C. May 5, 2021) ("In light of Mr. Johnson's fully vaccinated status, the Court does not find that the COVID-19 pandemic constitutes an extraordinary and compelling reason for his early release."); *United States v. Wiley*, 1:14-CR-48-5, 2021 WL 1669523 (M.D.N.C. Apr. 28, 2021) ("Because Mr. Wiley is fully vaccinated and the infection rate at his facility is low, his susceptibility to infection or severe illness from COVID-19 is too hypothetical to rise to the level of extraordinary and compelling circumstances."); *United States v. Gomez-Vega,* Cr. No. 19-1382-001 KG, 2021 WL 1339394, at *3 (D.N.M. Apr. 9, 2021) ("[A]bsent any evidence or argument combatting the efficacy of the vaccine's protection to

mitigate his medical concerns, the Court is strained to accept that Mr. Gomez-Vega's conditions constitute extraordinary and compelling reasons for compassionate release."); *United States v. Leach*, Cr. No. 3:14-cr-229-MOC-DCK-10, 2021 WL 1318318, at *3 (W.D.N.C. Apr. 8, 2021) ("Defendant therefore can demonstrate an extraordinary and compelling reason as required by § 3582(c)(1)(A)(i), but the facts that support it are likely to soon change once she is vaccinated."); *United States v. Mendoza*, Cr. No. 06-167, 2021 WL 1312920, at *8 (W. D. Pa. Apr. 8, 2021) ("While there are certainly still unknowns about the vaccine administered to Mendoza, it appears that Mendoza's risks of (1) being reinfected by COVID-19, and (2) suffering severe illness if he is reinfected, are speculative because of his vaccination and his initial bout with COVID-19 in May 2020."); *United States v. Singh*, No. 4:15-CR-00028-11, 2021 WL 928740, at *2 (M.D. Pa. Mar. 11, 2021) (concluding that recent vaccination mitigated the inmate's risk such that COVID-19, despite the inmate's underlying conditions, no longer presented an extraordinary and compelling reason to grant compassionate release).

Clearly, there can be no bright-line rule that a vaccinated individual is no longer at compellingly elevated risk, but in most instances, the risk of complications is dramatically reduced. Thus, while anything is possible, there is no articulable reason to believe that Gregory will be a non-responder or will have a different reaction to the vaccine than the vast majority of its recipients, who develop significant antibody protection to the virus. On the present record, then, this Court concludes that Gregory's vaccination status removes his other medical conditions from the category of risk constituting an "extraordinary and compelling reason" to consider compassionate release. Moreover, the facility at which Gregory is presently incarcerated, FMC Lexington, has only one inmate currently testing positive for the COVID-19 virus, likely because

9

of widespread inoculation. *See COVID-19 Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited May 11, 2021).

Gregory also points out that the long-term effects of COVID-19 are unknown and that the health of those who have recovered from COVID-19, like him, may still be impacted for years into the future. *E.g.*, ECF 144-7; ECF 144-8. However, Gregory's medical records do not indicate that he is currently experiencing serious health complications. Additionally, there is also no evidence suggesting he will be less susceptible to negative long-term effects from his previous COVID-19 infection if he is released.

Gregory makes an alternative argument that his need to care for his mother constitutes an extraordinary and compelling reason justifying continued evaluation of compassionate release. ECF 110. However, his family's situation is not akin to the family circumstances described as extraordinary and compelling by the Sentencing Commission. *See* U.S.S.G. § 1B1.13 Application n.1(C) (describing as extraordinary and compelling family circumstances the death or incapacitation of the defendant's minor child's caregiver or the incapacitation of the defendant's spouse or partner where the defendant would be the only available caregiver); *McCoy*, 981 F.3d at 282 n.7 (explaining that § 1B1.13 "remains helpful guidance even when motions are filed by defendants"). Information about Gregory's family circumstances is contained in his motion and in the letter his mother wrote to the Court. ECF 110, 115. Gregory's mother does not appear to require a live-in caregiver or to be incapable of caring for her own needs, nor is it clear from the record that there is no other caregiver available to fill that role. Thus, his family circumstances do not constitute the "extraordinary and compelling reason" needed to permit consideration of the remaining factors.

### B. Section 3553(a) Factors

Even had Gregory articulated the required "extraordinary and compelling reason," the Court would have to consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable" to see whether release is warranted. *See* 18 U.S.C. § 3582(c)(1)(A); *High*, 2021 WL 1823289, at *4 (affirming district court decision not to grant release to inmate with extraordinary and compelling circumstance based on its consideration of the § 3553(a) factors). Here, the § 3553(a) factors weigh against granting the requested relief. The court must consider Gregory's history and characteristics, and also whether he poses a danger to the community. *See* § 3553(a)(1), (2)(C). Gregory's criminal history is remarkably serious. He has prior federal convictions, within the last decade, for possessing a firearm after a felony conviction and possessing a firearm in furtherance of a drug trafficking offense. The statement of facts supporting those convictions indicates that, in 2009, Gregory brandished a loaded firearm in an altercation with other individuals in a parking lot. Before sustaining those federal convictions, Gregory had been convicted of three prior assaults, and two prior drug offenses. This Court notes that Gregory committed the instant offenses, including the murder, while he was in his forties, eliminating any notion that the serious violent crime was somehow attributable to youthful lack of judgment. Moreover, as described above, Gregory had extensive involvement with the criminal justice system well prior to the instant offenses, dating back to his first assault conviction in 1987. The danger Gregory poses to others is further highlighted by the nature of his most recent offenses, which involved the straw purchase of multiple firearms by a person with multiple felony convictions. Most importantly, the evidence considered at his sentencing involved his commission of an execution-style murder.

In addition to the factors listed above, the court must ensure that a sentence reflects the seriousness of the offense, promotes respect for the law, and affords adequate deterrence. *See* § 3553(a)(2)(A)–(B). Counting the time he spent in pretrial detention (which in fact overlapped with service of his prior federal sentence), Gregory has served approximately seven to eight years of his twenty-year sentence. As the Government noted at Gregory's sentencing, even that agreed twenty-year sentence represents an enormous reduction from the guideline range of "life" that would have resulted absent the parties' agreement, had the murder been considered in calculating his guidelines. A mere seven-to-eight year sentence for the extraordinarily serious offense of procuring multiple firearms, following a felony conviction, by straw purchase, and the relevant conduct of murdering someone with one of the illegal firearms, neither reflects the seriousness of the offense, promotes respect for the law, nor affords adequate deterrence to the defendant or others.[2] Accordingly, the § 3553(a) factors weigh in favor of Gregory's continued incarceration.

### C. Sentencing Commission Policy

The Fourth Circuit has explained that even though U.S.S.G. § 1B1.13 was issued before Congress authorized defendants to file their own motions for compassionate release, the guidelines still provide "helpful guidance" in evaluating defendant-filed motions. *High*, 2021 WL 1823289, at *3. Given the facts of this case, this Court cannot conclude that Gregory's release would be consistent with applicable Sentencing Commission policy statements, which provide that a sentence reduction is appropriate only if the defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13. It is true, as the Government concedes, that Gregory's disciplinary record during his time in prison has

---

[2] This Court is not persuaded that continuing Gregory's imprisonment by way of home detention would be the meaningful equivalent of further incarceration, from a deterrence perspective.

generally been quite good. He sustained just two relatively minor infractions in 2016. ECF 127-5.

However, the seriousness of his offenses compromises this Court's ability to make a finding that he no longer poses a danger. The grave danger to the community illustrated by his unlawful possession of firearms and his use of one such firearm to commit murder has not been alleviated by the COVID-19 pandemic. Accordingly, granting Gregory release for the remainder of his sentence of incarceration (or a shorter temporary period), even considering the possible installation of electronic monitoring, would not afford adequate protection to the public.

### IV. Conclusion

After considering all of the relevant factors, this Court concludes that Gregory has not cited an extraordinary and compelling reason permitting further consideration of compassionate release and, in the alternative, that his current sentence of 240 months best accomplishes the objectives described in 18 U.S.C. § 3553(a) and accords with Sentencing Commission policy statements, where any lesser sentence would not. Accordingly, reduction is not warranted, and Gregory's Motion for Compassionate Release is DENIED.[3]

A separate Order will ISSUE.

DATED: May 12, 2021            /s/
                                         Stephanie A. Gallagher
                                         United States District Judge

---

[3] Gregory's pending motion for relief pursuant to *Rehaif v. United States*, 139 S. Ct. 2191 (2019), ECF 112, will be addressed separately.